<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GEORGE SOMJEN<br><br>                    Plaintiff,<br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Civil Action No. 15-7150 (SDW)<br><br>**OPINION**<br><br>November 2, 2016 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff George Somjen's ("Plaintiff" or "Somjen") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL AND FACTUAL HISTORY**

   **A.  Procedural History**

On January 11, 2013, Plaintiff applied for Supplemental Security Income Benefits ("SSIB") (R. 139), alleging disability as of March 30, 2012 due to Crohn's disease, fatigue, joint pain, frequent need to eat, occasional depression, weight loss, abdominal pain, and cramps. (R. 157.) Plaintiff's application for SSIB was denied both initially and upon reconsideration. (R. 69-

74, 76-84.) Plaintiff's subsequent request for a hearing before an administrative law judge ("ALJ") was granted, and a hearing was held before ALJ Leonard Olarsch ("ALJ Olarsch") on July 30, 2014. (R. 37-68, 132.) Plaintiff appeared and testified at the hearing. (R. 35-68.) On October 16, 2014, ALJ Olarsch issued a decision finding Plaintiff was not disabled and denying his application for disability benefits. (R. 22-31.) On September 4, 2015, the Appeals Council denied Plaintiff's request for review of ALJ Olarsch's October 16, 2014 decision, making it the Commissioner's final decision. (R. 1-4.) Plaintiff seeks reversal of ALJ Olarsch's decision and asks this Court to grant him SSIB, or in the alternative, to vacate the final decision and remand the case for a further hearing. (Compl. 5-6.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was born on February 13, 1956 and was 58 at the time of ALJ Olarsch's decision. (R. 139,165.) In 2001, Plaintiff received an Associate's Degree in Humanities. (R. 45.) Plaintiff worked in sales and marketing for multiple healthcare firms from 1992-2002 and subsequently was employed as a business manager from 2002-2009. (*Id.*) Plaintiff's last significant employment was as an office manager at an architectural firm from 2010-2012, which entailed tasks involving company "payroll, timekeeping and human resources." (R. 45-6.)

#### 2. Medical History

The record reflects that numerous medical doctors and healthcare practitioners examined Plaintiff in relation to his disability claim. (R. 166–252.) In addition, Plaintiff testified about his health during the hearing before ALJ Olarsch. (R. 29–39.) The following is a summary of the medical evidence:

Plaintiff alleged in his original "Disability Report" that he was unable to work due to mainly physical ailments. (R. 157.) Specifically, Plaintiff contends that he suffers from "Crohn's disease, fatigue,[1] joint pain, frequent need to eat, occasional depression, weight loss, abdominal pain and cramps." (*Id.*) The latest records indicate Plaintiff is taking four medications: Imitrex (headache), Lipitor (high cholesterol), medicinal marijuana (Crohn's Disease), and Prilosec (heartburn). (R. 160.)

Plaintiff was diagnosed with chronic prostatitis in 1993 (R. 224) and began seeing urologist Dr. Gregg Zimmerman, M.D. ("Dr. Zimmerman") for treatment in 2010. (R. 163.) In Dr. Zimmerman's June 2012 and December 2012 progress notes, Plaintiff reported mild to moderate voiding issues involving urgency, frequency, and incomplete emptying. (R. 282, 286.) Plaintiff reported he wakes up to urinate 0-1 times per night and urinates every 2-3 hours during the day. (R. 282-83.) In Dr. Zimmerman's most recent progress notes from 2014, Plaintiff reported having to urinate every hour and elected to monitor the situation at that time. (R. 373, 422.)

In 2011, Plaintiff reported symptoms of abdominal pain, cramps, frequent diarrhea, poor appetite, and weight loss. (R. 69.) Shortly thereafter, Plaintiff was diagnosed with Crohn's disease by Dr. Friedman who noted it was "extensive in nature involving [a] greater portion of [the] ileum." (R. 222, 229-30.) Plaintiff reports being on New Jersey's Marijuana Program since November 2012, which has given him some relief. (R. 222.) He believes it improves his appetite and diminishes the diarrhea to some extent. (R. 247.) On July 11, 2013, Plaintiff saw a gastroenterologist, Dr. Barbarito, who conducted a small bowel examination. (R. 362.) He observed that the Crohn's disease had decreased in extensiveness when compared to the February

---

[1] Plaintiff was diagnosed with sleep apnea in 1988. (R. 222-24.) Plaintiff has a CPAP machine, which he does not use due to discomfort. (R. 44, 364.)

25, 2011 examination. (*Id.*) Dr. Barbarito also opined that there were better treatment options than medical marijuana that would further alleviate his Crohn's symptoms. (R. 361.)

John M. Delana, M.D. ("Dr. Delana") was Plaintiff's treating gastroenterologist from approximately April 2011 until June 2013. (R. 160.) His treatment notes showed positive progress with Plaintiff's Crohn's disease. From September 2011 to December 2012, Dr. Delana reported that Plaintiff was "feeling good," was well nourished, experiencing some fatigue, and that his diet and bowel movements were good. (R. 246, 248, 250, 251, 275.) Further, in a medical report form dated April 5, 2013, Dr. Delana opined Plaintiff's prognosis was "good" but did not offer an opinion regarding Plaintiff's ability to perform work-related activities. (R. 329-30.) He also opined Plaintiff had no other conditions that would limit his ability to perform work related activities. (*Id.*) On November 10, 2014, Plaintiff saw another gastroenterologist, Carl Wallach M.D., and reported "several episodes of loose bowl movements in the day", but denied treatment with Humira. (R. 419.)

Mark Quadrel, M.D., ("Dr. Quadrel") has been Plaintiff's primary physician from 1992 until present. (R. 181.) In his routine examinations, treatment records indicate Plaintiff had a normal gait, normal range of motion, normal strength, and normal reflex findings of his spine and all extremities from 2011 to 2014. (R. 304, 373, 375, 379, 381, 383). Plaintiff denied having depression, anxiety or sleeping problems in October 2011, December 2012, and December 2013. (R. 298, 299, 304, 384.) Additionally, the treatment notes do not include any mention of joint pains until May 9, 2014, when he indicated to Dr. Quadrel he applied for disability benefits.[2] (R. 371-72.) In an April 10, 2013 Internal Medical Report, Dr. Quadrel opined that Plaintiff's

---

[2] Treatment notes indicate "signif[icant] decreased ROM left shoulder and right knee." (R. 372.)

therapeutic use of medical marijuana due to his Crohn's diagnosis had "good clinical progress although the treatment itself prevents him from gainful employment." (R. 321.) He further opined that due to the treatment Plaintiff cannot drive, operate any type of machinery, perform calculations or any skills that require full attention. (R. 322.)

On January 4, 2012, Plaintiff was referred to Jeffrey Siegel, M.D. ("Dr. Siegel") for left elbow pain. (R. 392-93.) Dr. Siegel opined that because Plaintiff was relatively asymptomatic, he would not pursue investigation of the matter any further. (R. 392.)

In July 2013, Abraham G. Rosenzwieg, M.D. evaluated Plaintiff due to pain in his right knee. (R. 354.) He noted the x-rays were unremarkable and suggested an MRI of the area. (*Id.*) An MRI performed on July 11, 2013 indicated a tear of the lateral meniscus, as well as a mild ACL sprain. (R. 405.) After reporting discomfort in his shoulder, Plaintiff had another MRI performed on April 7, 2014. (R. 352.) The results suggested mild tendinopathy and partial tearing of the rotator cuff in his left shoulder. (*Id.*)

Lastly, Plaintiff reported episodes of double vision that occur two or three times per year, as well as intermittent tingling in both hands that occurs randomly. (*Id.*) He was referred to Eric S. Englestein, M.D., Ph.D. ("Dr. Englestein") for a neurologic assessment on July 24, 2013. (R. 355.) Dr. Englestein opined that the neurologic exam was unremarkable and the tingling in his hands were likely caused by carpal tunnel syndrome.[3] (R. 356.) Dr. Englestein subsequently performed an MRI on August 28, 2013. (R. 358.) The MRI was consistent with small vessel ischemia and thus Dr. Englestein recommended a transcranial Doppler study. (R. 358.) The

---

[3] In May 2014, Dr. Englestein performed a EMG/Nerve conduction study on Plaintiff. (R. 411.) The results were within normal limits, but suggested bilateral carpal tunnel syndrome with the sensory component being slightly more prominent on the right side and the motor component more marked on the left. (*Id.*)

5

subsequent Doppler study was unremarkable. (R. 366.) Dr. Englestein gave Plaintiff the option to see a neuroopthalmologist, but Plaintiff did not wish to pursue that course of action unless his double vision became significantly worse. (*Id*.)

### 3. Function Reports

In a self-function report dated January 18, 2013 (R. 171-178), Plaintiff stated that he carries out "normal daily activities" such as shopping, driving a car, and cooking meals. (R. 171, 173.) He also stated he performs household chores as needed, including snow clearing, minor repairs, and some cleaning. (R. 173.) He further stated his condition doesn't affect lifting, walking, sitting, stair climbing, concentration, getting along with others, seeing, or understanding. (R. 175.) Plaintiff can walk half a mile before needing to stop and rest. (R. 176.) He also reported that he is experiencing some loneliness and occasional depression. (R. 177.) Lastly, he reported that his illness affects his sleep and he frequently has to use the toilet due to diarrhea. (R. 172.)

In a subsequent self-function report dated May 3, 2013 (R. 186-193), Plaintiff stated he cannot do "extended things due to fatigue" or "work normally due to frequent bathroom use." (R. 187.) He also stated his illness affects walking, sitting, seeing, using his hands, concentration, and getting along with others, which he denied in the self-function report four months earlier. (R. 190-91.) Plaintiff reported these activities are affected by his fatigue, tingling and numbness in his hands and feet, lightheadedness, and double vision. (R. 191.) Lastly, Plaintiff reported that he was depressed. (R. 192.) The rest of his May 3, 2013 function report is consistent with his January 18, 2013 report. (192.)

In a Multiple Impairment Questionnaire dated June 16, 2013, Dr. Quadrel stated Plaintiff had Crohn's disease, sleep apnea, chronic fatigue, chronic/recurrent prostatitis, clinical depression, hypercholesteral, and acid reflux. He stated Plaintiff's fatigue and depression are progressive due

6

to these multiple ailments. (R. 343.) He further wrote Plaintiff's fatigue is an eight or nine on a possible scale of ten. (R. 345.) Dr. Quadel opined Plaintiff could sit for two to three hours per day and stand or walk for one hour at a time. (R. 345.) He also indicated that Plaintiff could not lift or carry over twenty pounds and his symptoms would likely increase in a competitive work environment, but he could tolerate a low stress job. (R. 347-48.)

### 4. Hearing Testimony

#### a. *Plaintiff*

At a hearing conducted by ALJ Olarsch on July 30, 2014, Plaintiff testified about his education, previous employment, medical ailments and treatments, and daily activities. (R. 35-68.) Plaintiff testified that he worked for one year after being diagnosed with Crohn's. (R. 40.) During this time, Plaintiff went to the bathroom four to six times a day for ten to thirty minutes at a time. (R. 40.) Plaintiff testified that he was able to lift boxes that were approximately twenty pounds (R. 47), but that mobility issues resulting from a torn right lateral meniscus and left rotator cuff, as well as carpel tunnel in both hands prevented him from working. (R. 41.) Plaintiff sought limited treatment for these ailments due to his lack of insurance coverage. (*Id*.) He further testified he can type and write, but has some pain in his hands and has difficulty climbing stairs due to his knee. (R. 43, 48.) Plaintiff also testified his minor limitations include fatigue and double vision. (R. 43-44.)

#### b. *Vocational Expert Rocco Meola ("VE Meola")*

During the October 16, 2014 hearing, VE Meola testified that a hypothetical individual with Plaintiff's limitations, including his need to access a restroom every two hours, could perform past relevant work as an office manager. (R. 57.) ALJ Olarsch inquired whether the same hypothetical individual would be able to find a job in the national economy if he could not perform

7

past relevant work and had to use the restroom every hour. VE Meola opined he could find a job with a one-hour limitation, such as a hand packager. (*Id.*)  Additionally, VE Meola testified that an individual with Plaintiff's conditions could find other employment such as in documentation and billing with 150,000 jobs in the national economy, an administrative clerk with 400,000 jobs in the national economy, or as a direct mail clerk with 70,000 jobs in the national economy.  (R. 59.)  However, if each one-hour bathroom break lasted longer than ten minutes each, VE Meola opined this would preclude the hypothetical individual from maintaining employment.  (R. 59.)

## II.   LEGAL STANDARD

### A.  Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The

impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality

or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able

to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

On October 16, 2014, after performing the five-step disability test, ALJ Olarsch found that from March 30, 2012 though the date of his decision, Plaintiff was not disabled as defined by the Act. (R. 30.) At step one of the disability analysis, ALJ Olarsch properly found that Plaintiff had not engaged in SGA since March 30, 2012, the alleged onset date of Plaintiff's disability. (R. 27.)

At step two, ALJ Olarsch properly found that Plaintiff suffered from the following severe impairments: inflammatory bowel disease, post status right knee muscle tear, and bilateral carpal tunnel syndrome. (*Id.*) In making this finding, ALJ Olarsch considered Plaintiff's testimony and the medical record as a whole. ALJ Olarsch cited to both Plaintiff's testimony as well as objective

medical evidence in the record to support his findings that Plaintiff suffered from inflammatory bowel disease and bilateral carpel tunnel. (R. 29.) ALJ Olarsch found these severe impairments limited Plaintiff's physical ability to do one or more basic work activities.

At step three, ALJ Olarsch properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). (R. 27.) Specifically, ALJ Olarsch found Plaintiff's physical impairments did not meet or medically equal the severity requirements set forth in listings 1.02 and 5.00 *et. seq.* (*Id.*)

First, ALJ Olarsch properly found that the evidence in this case does not demonstrate Plaintiff had "the requisite degree of difficulty to ambulate or perform fine and gross movements under medical listing 1.02. (R. 27.) This listing requires "involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively" or "involvement of one major peripheral joint in each upper extremity … resulting in inability to perform fine and gross movements effectively." Medical Listing 1.02(a),(b). Despite the pain Plaintiff claimed, the record shows that Plaintiff had a normal gait, normal range of motion, normal strength, normal sensations, and normal reflex findings of the spine and all extremities. (R. 29.) Plaintiff's initial function report stated his condition did not affect lifting, walking, stair climbing, understanding, sitting, seeing, using his hands, standing, completing tasks, or concentration. (R. 175-76.) Furthermore, Plaintiff reported he could do normal daily activities such as driving, clearing snow, making repairs, cooking, and cleaning, which all require the ability to effectively ambulate and perform fine and gross movements. (R. 171-75.)

Second, ALJ Olarsch properly found that Plaintiff's gastrointestinal disease did not meet the medical listing under 5.06. The medical records do not indicate a diagnostically corroborated

gastrointestinal disease resulting in obstruction, anemia, serum albumin, abdominal mass with pain, perineal disease, weight loss, or supplemental daily enteral nutrition. (R. 27.) ALJ Olarsch found and Plaintiff reported an improvement in abdominal symptomology, which included a better appetite and less frequent diarrhea with the use of marijuana. (R. 29.) Medical records also consistently indicate Plaintiff was well nourished and had no abdominal tenderness. (R. 29.)

For the above reasons, ALJ Olarsch properly found that Plaintiff's impairments did not equal or exceed the impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before undergoing the analysis in step four, ALJ Olarsch determined Plaintiff's RFC. (R. 27-9.) ALJ Olarsch properly found that Plaintiff has the RFC to perform light work as defined in 30 C.F.R. 404.1567(b). After extensive review of the record ALJ Olarsch found, specifically, that: "[Plaintiff] has the capacity to perform light work except the [Plaintiff] is limited to occasional postural maneuvers, to frequent fine fingering and gross handling, and to occupations that allow for a bathroom break every two hours for up to ten minutes each." (R. 29.) In making this determination, ALJ Olarsch considered all of Plaintiff's symptoms to the extent they could be accepted as consistent with the objective medical evidence and all other evidence based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p. ALJ Olarsch also considered opinion evidence in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. In support of his findings, ALJ Olarsch cited to Plaintiff's testimony, Plaintiff's self-function report, as well as the treatment and evaluative records of Plaintiff's physicians and the consultative medical examiner. (R. 28.)

ALJ Olarsch properly found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, ALJ Olarsch gave little weight

to Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms. (R. 29.)

ALJ Olarsch first properly considered testimony of the Plaintiff, who stated that he needed four to six restroom breaks during the workday, and could perform a wide range of daily activities including driving, home repair, cleaning, and shopping. (R. 28.)

ALJ Olarsch appropriately concluded that Dr. Quadrel's questionnaire findings about intensity, persistence, and limiting effects of Plaintiff's symptoms were not credible. (R. 28.) The limitations found in Dr. Quadrel's questionnaires are not supported by his treatment notes during the applicable time period, which indicated a normal gait, normal range of motion, normal strength, normal sensation, and normal reflex findings of the spine and all extremities. (R. 29.) Comparatively, in the questionnaire, Dr. Quadrel noted Plaintiff's fatigue was an 8-9 out of 10, he could walk no longer than an hour in a work day, could not sit more than three hours per workday and could not lift more than 20 pounds. (R. 28.) Plaintiff's main impairment, caused by inflammatory bowel disease, does not support these alleged limitations. (*Id*.) Additionally, due to the exaggerated nature of Dr. Quadel's questionnaire and lack of support from the record, ALJ Olarsch properly gave Dr. Quadel's findings little weight. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (holding an ALJ can reject a treating physician's opinion where there is contrary medical evidence).

ALJ Olarsch properly afforded the consultative medical examination great weight, which was supported by the medical record. (R. 29.) The examination indicated that Plaintiff presented with a normal gait, could properly negotiate the examination table, had no abdominal tenderness, presented with normal musculoskeletal functioning, had full range of motion, and had normal reflexes. (R. 29.) The examiner further found no functional limitations. Moreover, ALJ Olarsch

noted that Plaintiff's treating gastroenterologist, Dr. Delana, refused to provide an opinion about his ability to perform any work-related activities, but indicated his prognosis was "good." (R. 29.)

In light of the substantial evidence reviewed by ALJ Olarsch, this Court finds that ALJ Olarsch properly determined Plaintiff's RFC.

At step four, ALJ Olarsch properly found that Plaintiff could perform past relevant work under 20 C.F.R. 416.965. (R. 29.) ALJ Olarsch cited to the impartial vocational expert's testimony that Plaintiff can perform his past relevant work as an office manager. (*Id.*) VE Meola noted that Plaintiff's past relevant work was skilled and was not diminished by Plaintiff's impairments. (R. 30.) Furthermore, Plaintiff's work skills were transferable to other occupations with jobs existing in significant numbers in the national economy. ALJ Olarsch thus continued to step five. (*Id.*)

At step five, ALJ Olarsch properly found that Plaintiff can perform work that exists in significant numbers in the national economy as directed by Medical Vocational Rules ("Medical Rules") 202.07. (R. 30); *see* 20 C.F.R. §§ 404.1569, 416.969. ALJ Olarsch considered Plaintiff's age, education, work experience, and RFC in connection with 20 C.F.R. Part 404 Subpart P, Appendix 2. (R. 30.) The vocational expert determined that Plaintiff was capable of satisfying the requirements of the representative occupations such as documentation and billing, administrative clerk, and direct mail clerk. (R. 30.) For these reasons, ALJ Olarsch's conclusion that Plaintiff is not disabled under the Medical Rules is justified.

## IV. CONCLUSION

Because this Court finds that ALJ Olarsch's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED**.

s/ <i>Susan D. Wigenton</i><br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
Cc: Parties